**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**                    **FOR PUBLICATION**

| | |
|---|---|
| In re | Case No. 09-13412 (MG) |
| OLDCO M CORPORATION, | Chapter 11 |
| (f/k/a Metaldyne Corporation), *et al.,* | |
| | Jointly Administered |
| Debtor. | |
| EXECUTIVE SOUNDING BOARD | |
| ASSOCIATES INC., as Trustee for the Oldco M | Adv. Proc. No. 11-01939 (MG) |
| Distribution Trust, | |
| Plaintiff, | |
| v. | |
| ADVANCED MACHINE & ENGINEERING CO., | |
| Defendant. | |

---

**MEMORANDUM OPINION AND ORDER**
**GRANTING TRUSTEE'S MOTION FOR DEFAULT JUDGMENT**

*A P P E A R A N C E S:*

DUANE MORRIS LLP
*Counsel for Movant, Executive Sounding Board Associates Inc.,*
*as Trustee for the Oldco M Distribution Trust*
30 South 17th Street
Philadelphia, PA 19103
By:    Lawrence J. Kotler, Esq.

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

      This case raises the narrow but important and recurring issue whether a bankruptcy court

may enter a final default judgment in an adversary proceeding in which the sole defendant failed

to respond to the summons and complaint.  The Court concludes that it may order entry of a final

default judgment because the properly served defendant's failure to respond to the summons and complaint provides consent to the entry of the default judgment.

## I.   BACKGROUND

The adversary complaint in this case was filed by Executive Sounding Board Associates Inc. (the "Trustee"), the liquidating trustee of the Oldco M Distribution Trust (the "Trust"), which was established pursuant to the *Second Amended Joint Plan of Liquidation of Debtors and Debtors in Possession* (the "Plan") filed on May 11, 2011.  (09-13412, ECF Doc. # 1180.)  The complaint alleges claims under sections 547 and 550 of the Bankruptcy Code.  No response to the complaint was ever filed.  The bankruptcy court Clerk's certificate of default, required under FED. R. CIV. P. 55(a) made applicable to this proceeding by FED. R. BANKR. P. 7055, has already been entered in this case.  The plaintiff has filed a motion for the entry of a default judgment in the amount of $7,311.64, plus costs.  The motion is supported by an affidavit establishing that the complaint seeks only recovery of a "sum certain," that the defendant failed to respond to the complaint, and that the defendant is neither a minor nor an incompetent person.

This case is one of many similar cases filed by the Trustee after all avoidance claims were assigned to the Trust under the confirmed Plan.[1]  Proof of service of the summons and complaint on the defendant was filed on June 21, 2011.  (ECF Doc. # 3.)  On August 12, 2011, the Trustee filed proof of service of a second summons and complaint on the defendant.  (ECF Doc. # 5.)  No response to the complaint was filed.

On November 11, 2011, the Trustee filed an application for entry of a certificate of default by the Clerk of the bankruptcy court.  (ECF Doc. # 6.)  The Clerk issued the certificate of

---

[1]      This Opinion controls the outcome of all of the other adversary proceedings commenced by the Trustee as to which no response to the summons and complaint was filed by the defendant.  Separate judgments will be entered in each of the cases.

default on November 18, 2011, and proof of service of the certificate of default on the defendant was filed that same day.  (ECF Doc. # 8.)  The defendant still did not respond or seek to vacate the certificate of default.

On May 10, 2012, the Trustee filed a motion, supported by the declaration of Lawrence J. Kotler, Esq., counsel for the Trustee, for entry of judgment in the amount of $7,561.64 (the amount of the preference plus costs).  (ECF Doc. # 9.)  Proof of service of the motion and supporting declaration on the defendant was filed on June 1, 2012.  (ECF Doc. # 12.)  No response was filed.

Despite having received notice on four separate occasions, the defendant never submitted a response to any of the pleadings filed in this case.  When the motion for entry of a default judgment came on for hearing on July 16, 2012, no one appeared for the defendant.  Because of issues raised after the Supreme Court's decision in *Stern v. Marshall*, 131 S. Ct. 2594 (2011), regarding the authority of a bankruptcy judge to enter default judgments in preference avoidance actions, the Court directed plaintiff's counsel to file a brief addressing whether the Court can enter the requested judgment.  That brief was filed and served on the defendant.  (ECF Doc. # 14.)  No response was filed.

## II.    DISCUSSION

Bankruptcy courts in the Second Circuit have historically been able to order the entry of a default judgment in an adversary proceeding when the defendant failed to respond to the complaint.  This practice was premised on the theory that by failing to respond to the summons and complaint, a party implicitly consents to final judgment by an Article I court even where that party would otherwise have been constitutionally entitled to final adjudication by an Article III court.  The official form of summons used by the bankruptcy court that must be served with

every adversary complaint provides that a response to the complaint must be filed within 30 days

after the date of the issuance of the summons.  The summons also provides, in bold and all

capital letters, as follows:

> **IF YOU FAIL TO RESPOND TO THIS SUMMONS, YOUR
> FAILURE WILL BE DEEMED TO BE YOUR CONSENT TO
> ENTRY OF A JUDGMENT BY THE BANKRUPTCY
> COURT AND JUDGMENT BY DEFAULT MAY BE TAKEN
> AGAINST YOU FOR THE RELIEF DEMANDED IN THE
> COMPLAINT.**

*See* Summons and Notice of Pre-Trial Conference in Adversary Proceeding (*available at*

www.nysb.uscourts.gov, Forms).[2]  It is hard to conceive of clearer language warning of the

consequences of failing to respond to the adversary complaint.

Following the Supreme Court's decision in *Stern*, courts outside of this District have split

on whether a bankruptcy court may order the entry of a default judgment where the underlying

claims could not be finally adjudicated by a non-Article III court without consent.  None of those

cases, however, considered the consent language contained in the summons that failure to

respond to the summons and complaint provides consent to entry of a default judgment.  The

Court concludes that, by applying the correct analysis to the entry of a default judgment, *Stern*

does not limit the bankruptcy court's authority to enter a default judgment when the defendant

has failed to respond to the summons and complaint.[3]  The same answer applies whether the

---

[2]    This form is one of the official bankruptcy forms containing the identical language regarding consent.  *See*
Forms B 250A, 250B and 250C (*available at*
http://www.uscourts.gov/FormsAndFees/Forms/BankruptcyForms.aspx).

[3]    This case does *not* raise the issue whether a bankruptcy judge may order the entry of a final default
judgment after a hearing to determine the amount of damages under FED. R. CIV. P. 55(b)(2).  But if a defendant
loses the right to an Article III judge by failing to respond to the complaint, it is not clear why that right would be
resurrected by thereafter appearing and opposing an award of damages.  For example, once the Seventh Amendment
right to a jury trial is lost by failing to timely demand a jury, the right is not resurrected when a party otherwise
entitled to a jury changes its mind.  *See, e.g.,* 9 CHARLES ALAN WRIGHT & ARTHUR J. MILLER, FEDERAL PRACTICE
AND PROCEDURE § 2321, at 267 (3d ed. 2008) ("It is well settled by a considerable array of cases that waiver by

claims in the complaint are characterized as "related-to," core, or core but requiring an Article III

judge to enter a final order or judgment if the defendant appears, defends and does not consent to

a bankruptcy judge entering a final order or judgment.[4]

---

failure to make a timely demand is complete even though it was inadvertent and unintended and regardless of the explanation or excuse."). Additionally, the Court does not decide whether or when a bankruptcy judge may order entry of a final default judgment other than as a result of a defendant's failure to respond to the adversary complaint.

[4]      For that reason it is unnecessary to decide whether a bankruptcy court may enter a final order or judgment on preference avoidance and recovery claims under sections 547 and 550 of the Bankruptcy Code where the defendant has not filed a proof of claim, defends the action and refuses to consent to adjudication by a bankruptcy judge. Case law is divided on this question.

       For cases upholding the authority of bankruptcy judges to enter final judgments on preference avoidance claims, *see, e.g., Post-Confirmation Comm. v. Tomball Forest, Ltd. (In re Bison Bldg. Holdings, Inc.)*, 473 B.R. 168, 171 (Bankr. S.D. Tex. 2012) (Isgur, J.) ("This Court may not issue a final order or judgment in matters that are within the exclusive authority of Article III courts. The Court may, however, exercise authority over essential bankruptcy matters under the 'public rights exception.' Actions to recover preferential transfers under § 547 fall within the Bankruptcy Court's constitutional authority.") (citations omitted); *Burtch v. Seaport Capital, LLC (In re Direct Response Media, Inc.)*, 466 B.R. 626, 644 (Bankr. D. Del. 2012) (Gross, J.) ("This Court disagrees that the *Stern* decision stands for the . . . proposition that a non-Article III court does not have authority to enter a final judgment on a preference . . . claim brought by the Debtor to augment the estate, or any other core claim (as defined in 28 U.S.C. § 157(b)(2)) that is not a state law counterclaim. . . . By extension, the Court concludes that *Stern* does not remove the bankruptcy courts' authority to enter final judgments on other core matters, including the authority to finally adjudicate preference . . . actions like those at issue before this Court."); *West v. Freedom Med., Inc. (In re Apex Long Term Acute Care-Katy, L.P.)*, 465 B.R. 452, 463 (Bankr. S.D. Tex. 2011) (Isgur, J.) ("The Court concludes that preference actions both stem from the bankruptcy itself and are decided primarily pursuant to *in rem* jurisdiction. The cause of action for preferential transfers is established by the Bankruptcy Code. The provision for recovering preferences is integrally bound up in the overall scheme for ensuring equitable distribution among creditors. Preferential transfers are payments for legitimate debts. Preferences are avoidable precisely because they enable some creditors to receive more than their fair distribution under the Bankruptcy Code. The entire purpose of the cause of action, then, is to enforce the Bankruptcy Code's equality of distribution. In this respect, preferential transfer actions are fundamentally different from fraudulent transfer actions, although the two causes of action superficially resemble.").

       For cases rejecting the authority of bankruptcy judges to enter final judgments on preference avoidance claims, *see, e.g., Penson Fin. Servs. Inc. v. O'Connell (In re Arbco Capital Mgmt., LLP)*, 479 B.R. 254, 264-66 (S.D.N.Y. 2012) (Oetken, J.) ("Most recently the Supreme Court concluded that the public rights exception is limited to 'cases in which the claim at issue derives from a federal regulatory scheme, or in which resolution of the claim by an expert government agency is deemed essential to a limited regulatory objective within the agency's authority.' . . . The Court . . . concludes that claims for avoidance of preferential transfers, where the creditor has filed no proof of claim, are not subject to the public right[s] exception. . . . While the Supreme Court has not expressly held that actions to avoid preferential transfers are matters of private right, the Supreme Court has examined the authority of the bankruptcy court to adjudicate preferential transfer claims in the Seventh Amendment context and determined that preference defendants are entitled to a trial by jury. . . . *Stern's dicta* similarly support the conclusion that where a creditor has not submitted a proof of claim, preference actions may be finally adjudicated only by an Article III court. . . . Accordingly, this Court concludes that preferential transfer claims, where, as here, the preference defendant has filed no proof of claim against the bankruptcy estate, are matters of private right.") (citations omitted); *Tabor v. Kelly (In re Davis)*, 2011 WL 5429095, at *12 (Bankr. W.D. Tenn. Oct. 5, 2011) (Latta, J.) ("Using this test, when a creditor who has not filed a proof of claim is sued by the bankruptcy trustee to recover a

### A.  Overview of Relevant Statutory Provisions and Supreme Court Precedent

Article III, Section 1 of the United States Constitution provides as follows:

> The judicial power of the United States shall be vested in one
> Supreme Court, and in such inferior courts as the Congress may
> from time to time ordain and establish. The judges, both of the
> supreme and inferior courts, shall hold their offices during good
> behaviour, and shall, at stated times, receive for their services, a
> compensation, which shall not be diminished during their
> continuance in office.

U.S. Const. art. III, § 1.

Pursuant to Article III, Congress may not "withdraw from [Article III] judicial cognizance any matter which, from its nature, is the subject of a suit at the common law, or in equity, or admiralty." *Murray's Lessee v. Hoboken Land & Improvement Co*., 59 U.S. 272 (1856).  In *Northern Pipeline Construction Co. v. Marathon Pipe Line Co*., 458 U.S. 50 (1982), the Supreme Court struck down as unconstitutional the 1978 Bankruptcy Act's provisions vesting final adjudicative authority in the bankruptcy court—an Article I court—over certain state-law claims asserted by the debtor against a third party.  The Supreme Court held that Article III required final adjudicative authority over matters within the competence of the Article III judiciary to be vested in an Article III court, and not removed to tribunals where judges lack the Article III protections of life tenure and non-diminution of salary.  *Id.* at 80-81.  The Court recognized "a category of cases involving '*public* rights' that Congress could constitutionally assign to 'legislative' courts [*i.e.,* Article I bankruptcy courts] for resolution,"[5] but also held that

---

preferential transfer, it is a matter of private right, which, as we have seen, requires the exercise of the judicial power of the United States, a power that cannot be exercised by a non-Article III judge.").

[5]     *Stern v. Marshall*, 131 S. Ct. 2594, 2610 (2011).  Public rights are, essentially, (1) rights created by federal law, to which the political branches are free to attach conditions; (2) claims tied up inextricably with such rights; or (3) "matters that historically could have been determined exclusively by the Executive and Legislative Branches." *See id.*, 131 S. Ct. at 2611–613 (internal quotation marks and citation omitted).  In *Granfinanciera, S.A. v.*

Article III prohibits bankruptcy courts from entering final judgments on matters of purely *private*

rights. *Id.* at 81 (emphasis added).

In response to *Northern Pipeline,* Congress enacted the Bankruptcy Amendments and

Federal Judgeship Act of 1984 (the "1984 Act"), which allows district courts to refer all cases

and proceedings arising under, arising in or related to a case under title 11 to bankruptcy judges.[6]

28 U.S.C. § 157(a).  Importantly, the 1984 Act also divided bankruptcy matters into "core" and

"non-core."  *See* 28 U.S.C. § 157(b)(1), (c)(1).  Section 157 provides a non-exhaustive list of

examples of core matters, including avoidance actions and counterclaims by the estate against

persons filing claims against the estate.  *Id.* § 157(b)(2)(C), (F) and (H).

The statute provides that bankruptcy courts may hear core matters and non-core matters

that are "otherwise related" to a case under title 11, but they only have statutory authority to

enter final judgments in core proceedings.  For non-core matters, absent consent of the parties,

bankruptcy courts may only submit proposed findings of fact and conclusions of law to the

district court; the district court then has the authority to enter a final judgment after reviewing *de

novo* any matters to which a party objects.  28 U.S.C. § 157(c)(1).  However, as discussed below,

---

*Nordberg,* 492 U.S. 33 (1989), in the context of determining whether a defendant was entitled to a Seventh
Amendment right to a jury, the Court held that the public-rights doctrine does not allow a bankruptcy court to decide
a fraudulent-conveyance claim against a non-creditor.  It reasoned that fraudulent conveyance claims are more akin
to suits at common law that resemble state-law contract claims than "creditors' hierarchically ordered claims to a pro
rata share of the bankruptcy res."  *Id.* at 56.  However, in *Katchen v. Landy*, 382 U.S. 323 (1966), and *Langenkamp
v. Culp*, 498 U.S. 42 (1990), the Supreme Court held that bankruptcy courts have the authority to decide preference
actions against creditors who filed a proof of claim in the bankruptcy, as the determination of this issue is "part and
parcel" of the claims-allowance process.

[6]        In this District, all chapter 11 cases and related proceedings are automatically referred to bankruptcy judges
via a standing order of reference.  *See* Amended Standing Order of Reference M–431, dated January 31, 2012
(Preska, C.J.).

parties may *consent* to a bankruptcy court's final adjudication of non-core matters pursuant to

section 157(c)(2).  28 U.S.C. § 157(c)(2).[7]

Questions concerning whether parties may consent to entry of a final order or judgment

by an Article I bankruptcy judge arise primarily from several decisions of the Supreme Court,

beginning with *Murray's Lessee,* 59 U.S. 272 (1856), and carrying forward to modern times with

*Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833 (1986) and, most recently, *Stern*.

In *Schor*, the Supreme Court found two components inherent in the constitutional right to an

Article III judge: (1) the individual constitutional right of litigants to insist on an Article III

decision-maker; and (2) the structural constitutional right, stemming from the separation of

powers doctrine which requires an Article III decision-maker.  *See Schor,* 478 U.S. at 848-49.

The Supreme Court has recognized that the individual constitutional right to an Article III

decision-maker may be lost through waiver or express or implied consent.  *Id.* at 848 ("[A]s a

personal right, Article III's guarantee of an impartial and independent federal adjudication is

subject to waiver.").  The structural right, however, which is derived from the core separation of

powers principle, assures that the executive and legislative branches will not encroach on the

---

[7]        Under section 157(d), a "district court may withdraw . . . any case or proceeding referred [to the bankruptcy court] on its own motion or on a timely motion of any party, for cause shown," 28 U.S.C. § 157(d), referred to as "withdrawing the reference."   In the Second Circuit, courts evaluate whether "cause" is shown by looking to, among other things, the following factors: "whether the claim or proceeding is core or non-core . . . considerations of efficiency, prevention of forum shopping, and uniformity in the administration of bankruptcy law*." In re Orion Pictures Corp.,* 4 F.3d 1095, 1101 (2d Cir. 1993).  Post-*Stern*, district courts in this district have also considered whether the bankruptcy court has the constitutional authority to enter a final judgment.  *See, e.g., Lehman Bros. Holdings Inc. v. JPMorgan Chase Bank, N.A. (In re Lehman Bros. Holdings Inc.)*, 480 B.R. 179, 188 (S.D.N.Y. 2012) (Sullivan, J.) ("To determine whether a party has shown 'cause' for permissive withdrawal . . . the Second Circuit, prior to *Stern*, directed that the district court weigh several factors [(the 'Orion factors')], including: (1) whether the claim [or proceeding] is core or non-core, (2) what is the most efficient use of judicial resources, (3) what is the delay and what are the costs to the parties, (4) what will promote uniformity of bankruptcy administration, (5) what will prevent forum shopping, and (6) other related factors. . . .   Chief among these factors pre-*Stern* was the first factor—whether the claim or proceeding is core or non-core.  However, post-*Stern*, this factor no longer occupies the same position of prominence among the *Orion* factors. . . .  Thus, in evaluating a motion to withdraw post-*Stern*, the principal question is no longer whether the claim in question is 'core' or 'non-core' pursuant to the Bankruptcy Code but whether the bankruptcy court has *constitutional authority* to enter final judgment on the claims at issue.") (internal quotation marks and citations omitted) (emphasis added).

powers of the Article III judiciary.  As a result, the structural Article III protection cannot be lost

through waiver or express or implied consent by the parties.  In other words, "[w]hen these

Article III limitations are at issue, notions of consent and waiver cannot be dispositive because

the limitations serve institutional interests that the parties cannot be expected to protect."  *Id.* at

851.

       The right to an Article III judge does not always invoke both the individual and structural

components of the right.  The touchstone for the non-waivable structural right is that Congress

may not "withdraw from [Article III] judicial cognizance any matter which, from its nature, is

the subject of a suit at the common law, or in equity, or admiralty."  *Murray's Lessee*, 59 U.S. at

284; *Schor*, 478 U.S. at 854 ("The risk that Congress may improperly have encroached on the

federal judiciary is obviously magnified when Congress 'withdraw[s] from judicial cognizance

any matter which, from its nature, is the subject of a suit at the common law, or in equity, or

admiralty' and which therefore has traditionally been tried in Article III courts, and allocates the

decision of those matters to a non-Article III forum of its own creation.  *Murray's Lessee v.

Hoboken Land & Improvement Co.,* 18 How. 272, 284 (1856).  Accordingly, where private,

common law rights are at stake, our examination of the congressional attempt to control the

manner in which those rights are adjudicated has been searching."); *Stern*, 131 S. Ct. at 2609

("Article III could neither serve its purpose in the system of checks and balances nor preserve the

integrity of judicial decisionmaking if the other branches of the Federal Government could

confer the Government's 'judicial Power' on entities outside Article III.  That is why we have

long recognized that, in general, Congress may not 'withdraw from judicial cognizance any

matter which, from its nature, is the subject of a suit at the common law, or in equity, or

admiralty.'") (citation omitted)).  In *Stern*, the Court set forth limitations on a bankruptcy judge's

authority to enter a final judgment in certain matters; Congress did not remove from Article III

judicial cognizance any cases in bankruptcy court for which the right to an Article III decision-

maker exists.  As a result, only the individual right is at issue and it can be lost through waiver or

consent.

As discussed below, the Supreme Court and several circuit courts (including the Second

Circuit) have found that in matters referred to the bankruptcy courts, the right to an Article III

court invokes only the waivable individual right and does not implicate separation-of-powers

concerns.  In *Stern* itself, the Court acknowledged that the parties may consent to entry of a final

order or judgment by a bankruptcy judge in non-core matters.  *See Stern*, 131 S. Ct. at 2606,

2609.

### B. Under Second Circuit Law, a Defendant May Impliedly Consent to Final Adjudication by a Non-Article III Tribunal Where It Would Otherwise Be Constitutionally Entitled to an Article III Tribunal

Second Circuit precedent provides that a defendant in a case or proceeding referred to the

bankruptcy court may consent, either expressly or impliedly, to a final determination by a non-

Article III tribunal, even though the defendant would otherwise have the right to have the dispute

adjudicated by an Article III tribunal.[8]

In *Men's Sportswear, Inc. v. Sasson Jeans, Inc. (In re Men's Sportswear, Inc.)*, 834 F.2d

1134 (2d Cir. 1987), the district court affirmed a default judgment in the amount of $1.1 million

entered by the bankruptcy court after the court struck the defendant's answer as a result of the

defendant's misconduct.  On appeal to the Second Circuit, the defendant argued that the

---

[8]     Two recent decisions from other Circuits also bear on these issues and are discussed later in this Opinion. *See Exec. Benefits Ins. Agency v. Arkison (In re Bellingham Ins. Agency, Inc.)*, Case No. 11-35162, 2012 WL 60113836 (9th Cir. Dec. 4, 2012) (hereinafter, "*Bellingham*"); *Waldman v. Stone*, 698 F.3d 910 (6th Cir. 2012) (hereinafter, "*Waldman*").  Neither *Bellingham* nor *Waldman* is controlling here because there is binding Second Circuit precedent.

bankruptcy court lacked the authority to enter the default judgment, arguing that only an Article III judge could do so.  The Second Circuit rejected that argument.  The defendant also asserted that the claim on which judgment was entered was a "non-core" claim and accordingly should not have been adjudicated by an Article I bankruptcy judge.  *Id.* at 1137.

The Second Circuit concluded that it made no difference whether the claim was core or non-core.  Rather, the court found it dispositive that the defendant had impliedly consented to the bankruptcy judge entering a final judgment:

> [W]e need not resolve [the issue whether the claim was core or non-core], for even if the instant action was not a "core" proceeding, 28 U.S.C. § 157(c)(2) empowers the bankruptcy court to enter final judgment in a "non-core" but "related" matter, providing both parties consent to the court's jurisdiction.  We conclude that Sasson's failure to object to Judge Lifland's assumption of "core jurisdiction" at any point in these extensive proceedings before the bankruptcy court and the further failure to object to any part of the appeal process in the district court constitutes consent to the final adjudication of this controversy before the bankruptcy court.

> We are cognizant that a court should not lightly infer from a litigant's conduct consent to have private state-created rights adjudicated by a non-Article III bankruptcy judge.  Indeed, to do so would violate the spirit of *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50 (1982), which emphasizes that the power to adjudicate private rights, such as the right to recover contract damages, cannot be lodged in a court lacking "the essential attributes of the judicial power."

*Id.* at 1137-38.  While *Men's Sportswear* was decided long before *Stern*, the Second Circuit identified the existence of a constitutional right to an Article III tribunal, based on the *Northern Pipeline* decision, but nonetheless concluded that implied consent can supply a proper basis for the bankruptcy court to enter a final order or judgment.

Recent post-*Stern* decisions of district courts within this Circuit have recognized the continued vitality of the holding in *Men's Sportswear* that implied consent is a proper basis for

upholding the exercise of authority of a bankruptcy judge to enter a final order or judgment.  In

*Coudert Brothers LLP v. Baker & McKenzie LLP (In re Coudert Brothers LLP),* 2011 WL

5593147 (S.D.N.Y. Sept. 23, 2011) (McMahon, J.), the court addressed at length the role of

express and implied consent to adjudication by an Article I bankruptcy judge after *Stern*. While

concluding that the defendant had not consented to adjudication by the bankruptcy court based

on the facts in that case, the district court recognized that implied consent is a sufficient basis for

concluding that the bankruptcy court may enter a final order of judgment:

> Prior to *Stern,* courts in this Circuit routinely found that parties
> could and did consent implicitly to the exercise of final jurisdiction
> by the Bankruptcy Court even with respect to non-core matters.
> *See, e.g., In re Men's Sportswear. Inc.,* 834 F.2d 1134, 1137– 138 (
> 2d Cir. 1987); *In re Millenium Seacarriers. Inc.,* 419 F.3d 83, 98
> (2d Cir. 2005); *In re Tyson,* 433 B.R. 68, 77 (S.D.N.Y. 2010); *cf.
> Roell v. Withrow,* 538 U.S. 580 (2003).   *Stern* confirmed that
> consent can be a sufficient basis for Article I final adjudication,
> making clear that its Article III holding did not go to the
> Bankruptcy Court's subject matter jurisdiction: "Section 157
> allocates the authority to enter final judgment between the
> Bankruptcy Court and the district court.  *See* §§ 157(b)(1), (c)(1).
> That allocation does not implicate questions of subject matter
> jurisdiction.  *See* § 157(c)(2) (parties may consent to entry of final
> judgment by Bankruptcy Judge in non-core case)."  *Stern,* 131 S.
> Ct. at 2608.

2011 WL 5593147, at *10.

In *Development Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP,* 462 B.R. 457

(S.D.N.Y. 2011) (McMahon, J.), the debtor asserted claims against the defendants to recover fees

and fraudulent conveyances.  *Id.* at 461.  After the bankruptcy court denied the defendants'

motions to dismiss, the district court granted the defendants' motion to withdraw the reference

with respect to their claims.  The court found that the claims in the case did not involve public

rights and would not necessarily be resolved by the claims allowance process, and, absent

consent, the claims could not be finally adjudicated by an Article I court.  In considering whether

the defendants had consented to the bankruptcy court's adjudication of the claims, the court

explained:

> [T]he 1984 Bankruptcy Act vested final adjudicative power over "core" matters in Bankruptcy Court, and allowed it to make recommendations only in "non-core" matters. *See* 28 U.S.C. § 157. However, § 157 also provides that a Bankruptcy Judge may finally adjudicate a non-core matter if the parties consent to such adjudication. . . . *Such consent could either be express or implied.* However, where a jury right is asserted, any consent to final adjudication in Bankruptcy Court must be express. *See* 28 U.S.C. § 157(e).

*Id.* 469-70 (citations omitted and emphasis added). The *Development Specialists* court found

that the defendants did not consent to the bankruptcy court's adjudication of the claims, because

(1) merely pleading in its answer that a bankruptcy court has *jurisdiction* to consider the claims

does not constitute consent to the bankruptcy court's *authority* to finally adjudicate such claims;

(2) requesting the bankruptcy court dismiss the case and enter "judgment" does not constitute

consent, particularly where the motions were submitted before *Stern* was decided and the

defendants therefore did not realize that the court could not finally determine the claims without

their consent; and (3) appealing the bankruptcy court's ruling does not constitute consent

because it is not a "knowing and voluntary" relinquishment of rights to an Article III decision-

maker. *Id.* at 471-72. While finding that the circumstances in the case before it did not satisfy

the requirements for express or implied consent, the court in *Development Specialists* recognized

that the principle of *Men's Sportswear* remains good law in this Circuit. *Id.* at 470.

Two recent district court decisions in the Southern District of New York, denying

motions to withdraw the reference, notwithstanding the bankruptcy court's inability, absent

consent, to issue a final judgment on the claims, have also cited *Men's Sportswear* with approval.

*See Weisfelner v. Blavatnik (In re Lyondell Chem. Co.)*, 467 B.R. 712, 722 (S.D.N.Y. 2012)

(Cote, J.); *Messer v. Bentley Manhattan Inc. (In re Madison Bentley Assocs., LLC),* 474 B.R.

430, 436 (S.D.N.Y. 2012) (Scheindlin, J.).  In both cases, the courts found that the moving

parties had not consented to the bankruptcy court's adjudication of the matters.

In *Weisfelner*, the court held that the defendants' participation in proceedings before the

bankruptcy court without objection for over a year, and the bankruptcy court's order confirming

the plan and allowing the court to "hear and determine" claims, did not amount to the

defendants' consent to the court's ability to enter final judgment on their core fraudulent transfer

claims.  467 B.R. at 722.  First, the court explained that *implied* consent appeared to be

insufficient under FED. R. CIV. P. 12(b), made applicable by Bankruptcy Rule 7012(b), because

Rule 7012(b) requires the "express consent of the parties" for a bankruptcy court to issue a final

judgment in non-core matters.  *Id.* ("There is no implied consent where, as here, defendants seek

withdrawal at the close of discovery before any trial activities or judgment, and where new

precedent renders unclear the authority of the bankruptcy to enter final judgment on certain

claims.").  Significantly, Rule 7012(b) presupposes that a party responded to a complaint; this

makes the rule inapplicable to default judgment determinations, where no response has been

filed.[9]  In addition, the court drew a distinction between subject matter jurisdiction and the

court's authority to enter final judgments, finding that, while the plan's language authorizing the

---

[9]        The Ninth Circuit's recent decision in *Bellingham* rejected the argument that the requirement for *express* consent contained in Rule 7012 prevents a judicial determination that the facts and circumstances of the case support a finding of implied consent to entry of a final judgment by a bankruptcy judge.  *See Bellingham*, 2012 WL 60138636, at *13 ("[T]he text of § 157(c) only requires consent simpliciter.  *See* 28 U.S.C. § 157(c)(2) (requiring 'the consent of all the parties to the proceeding').  By contrast, § 157(e) permits bankruptcy judges to conduct jury trials 'with the *express* consent of all the parties' (emphasis added).  The adjectival distinction suggests that Congress intended to allow parties to consent by their actions to the authority of bankruptcy courts to enter dispositive orders on any bankruptcy-related claim.  Accordingly, in cases like this one—in which the defendant was aware of its right to seek withdrawal of the reference but opted instead to litigate before the bankruptcy court— consent is established.").  A proposed amendment to Rule 7012 removes the requirement that consent be express; the Committee Note explains that "[t]he amended rule also removes the provision requiring express consent before the entry of final orders and judgments in non-core proceedings."  *See* http://www.uscourts.gov/RulesAndPolicies/rules/proposed-amendments.aspx, at 42 of 238.

court to "hear and determine" claims conferred jurisdiction upon the court, it did not confer authority for the court to enter final judgments.[10] *Id.*

In *Messer,* the complaint asserted fraudulent conveyance and alter ego claims. The district court found that the defendants had not consented to the court's adjudication of their claims by failing to timely file a motion to withdraw the reference. 474 B.R. at 436-37. The court noted that, pursuant to 28 U.S.C. § 157(c)(2), a bankruptcy court may make a final determination of non-core claims with the parties' consent. *Id.* It explained that "[t]his exception endures under *Stern*: '[e]ven when private rights are at issue, non-Article III adjudication may be appropriate when both parties consent.'" 474 B.R. at 436 (quoting *Stern*, 131 S. Ct. at 2628). In reaching its decision, the *Messer* court cautioned other courts that, in cases where private, state-law rights are to be determined by a non-Article III judge, consent should not be lightly inferred; indeed, "a waiver of important rights should only be found where it is fully knowing." *Id.* at 437 (quoting *Dev. Specialists,* 462 B.R. at 472).

While these recent decisions recognize that implied consent should not be easily found, nothing in *Coudert Brothers*, *Development Specialists*, *Weisfelner*, or *Messer* suggests that

---

[10]     The *Weisfelner* court rejected the notion that there was a statutory "gap" with respect to the type of claims implicated in *Stern*—core claims which a bankruptcy court may not finally adjudicate. Recognizing the Supreme Court's explicit statement that its holding was "narrow," the court explained that "[d]isallowing bankruptcy courts from issuing findings of fact and conclusions of law on core Article III claims would significantly change the division of labor between bankruptcy courts and district courts. . . . When Congress enacted the 1984 Act, it delegated bankruptcy courts greater authority over core claims than non-core claims. Post- *Stern*, this statutory structure should be upheld as much as possible." *Id*. at 724.  *See also Bellingham*, 2012 WL 6013836, at *9-10 ("Nowhere does the statute explicitly authorize bankruptcy judges to submit proposed findings of fact and conclusions of law in a core proceeding; § 157(c)(1) is expressly limited to 'non-core' proceedings. Is the power 'to hear and determine' capacious enough to include the power to submit proposed findings in a core proceeding? Or are bankruptcy courts impotent to address fraudulent conveyance proceedings, because they fall in the interstices of § 157? We have noted that Congress enumerated the examples of core proceedings in § 157(b)(2) with a view toward expanding the bankruptcy court's jurisdiction to its constitutional limit.  With respect to any bankruptcy-related claim, then, the bankruptcy courts must be vested with as much adjudicatory power as the Constitution will bear.  In light of this statutory objective, the power to 'hear and determine' a proceeding surely encompasses the power to hear the proceeding and submit proposed findings of fact and conclusions of law to the district court. Section 157(b)(1) empowers bankruptcy courts to 'hear and determine' fraudulent conveyance claims in a manner consistent with the strictures of Article III—and that includes the more modest power to submit findings of fact and recommendations of law to the district courts.") (internal quotation marks and citations omitted).

consent cannot or should not be found where a defendant has been properly served with a summons that expressly warns that failure to respond to the complaint will be deemed consent to entry of a default judgment by the bankruptcy court. While cautioning against too easily finding consent, each of these cases nevertheless acknowledges that implied consent is a proper basis for upholding the exercise of authority of a bankruptcy judge to enter a final order or judgment.

As explained below, nothing in *Stern* undercuts the rationale in *Men's Sportswear*. Because *Men's Sportswear* remains the law of this Circuit, this Court is bound to follow its reasoning unless and until the Second Circuit or the Supreme Court say otherwise. The issue then is whether defendant's failure to respond to the summons and complaint provides express or implied consent to entry of a final default judgment by an Article I bankruptcy judge. In light of the explicit language contained in the summons, this is frankly an easy decision.

### C. A Defendant's Failure to Respond to the Summons and Complaint Constitutes Implied Consent, Providing This Court With the Authority to Enter a Final Default Judgment

When a defendant fails to respond to a properly served complaint in an adversary proceeding, the plaintiff may move for entry of a default judgment on the claim. The procedure for seeking a default judgment is set forth in FED. R. BANKR. P. 7055, which incorporates FED. R. CIV. P. 55. Pursuant to Rule 7055(a), the bankruptcy court Clerk "must enter [a] party's default" when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and the failure is shown by affidavit or otherwise." FED. R. CIV. P. 55(a). If the claim is for a sum certain or a sum that can be made certain by computation, the Clerk *must* enter judgment against the defaulting party in the amount of the claim. FED. R. CIV. P. 55(b). Rather than asking the Clerk to enter the judgment in this case, the plaintiff's motion asks the bankruptcy judge to order the entry of the judgment.

   *1.    The Impact of* Stern v. Marshall

   The Supreme Court's decision in *Stern v. Marshall,* 131 S. Ct. 2594, has impacted the

bankruptcy court's ability to issue final judgments in core proceedings by holding that a

bankruptcy court lacks constitutional authority to make final determinations on certain types of

core matters.  *Stern* concerned the estate of Vickie Lynn Marshall (a/k/a Anna Nicole Smith).

One of Vickie's creditors, Pierce Marshall, filed a proof of claim in the bankruptcy and a

defamation claim against Vickie.  Vickie counterclaimed, alleging that Pierce had tortiously

interfered with her receipt of an inter-vivos gift from her late husband, Pierce's father.  Vickie's

counterclaim arose under state law.  Despite finding that Vickie's counterclaim was "core" under

section 157(b)(2)(c), the Court held that the bankruptcy court "lacked the constitutional authority

to enter a final judgment on a state law counterclaim that is not resolved in the process of ruling

on a creditor's proof of claim."  *Id.* at 2610.

   The Court reached its conclusion, in part, by relying on the distinction between public

and private rights set forth in *Northern Pipeline*.  The Court held that the state-law counterclaim

at issue was a purely private right and the bankruptcy court, as an Article I court, lacked the

constitutional authority to enter a final judgment on the claim, notwithstanding its "core" status.

Essentially, Congress in adopting the 1984 Act improperly granted bankruptcy courts the

authority to finally determine claims that fell outside the public rights exception and therefore

granted bankruptcy judges authority that exceeded the permissible limits of Article III.  The

Court also based its opinion on other factors, including the fact that the defendant, Pierce, did not

consent to adjudication by a non-Article III tribunal.

   The Court addressed the issue of consent twice in its opinion.  First, the Court considered

whether Pierce consented to the bankruptcy court's final determination of his defamation claim

against Vickie.  It found that Pierce had, in fact, consented by repeatedly advising the court that

he was happy to litigate his claim in the bankruptcy court.  The Court specifically acknowledged

that, pursuant to 28 U.S.C. § 157(c)(2), a party can consent to a bankruptcy court's authority to

finally adjudicate a non-core claim.  *Id.* at 2606.  In reaching its conclusion, the Court reiterated

the holding in *Schor* that the individual constitutional right to an Article III decision-maker may

be waived, whereas the structural, separation-of-powers constitutional right may not.  It

emphasized that Pierce could not later complain about the bankruptcy court's decision on the

defamation claim because Pierce was unhappy with the result.  *Id.* at 2608 ("Given Pierce's

course of conduct before the Bankruptcy Court, we conclude that he consented to that court's

resolution of his defamation claim (and forfeited any argument to the contrary).  We have

recognized the value of waiver and forfeiture rules in complex cases, and this case is no

exception.  In such cases, as here, the consequences of a litigant . . . sandbagging the court—

remaining silent about his objection and belatedly raising the error only if the case does not

conclude in his favor—can be particularly severe.  If Pierce believed that the Bankruptcy Court

lacked the authority to decide his claim for defamation, then he should have said so—and said so

promptly.  Instead, Pierce repeatedly stated to the Bankruptcy Court that he was happy to litigate

there.  We will not consider his claim to the contrary, now that he is sad.") (internal quotation

marks and citations omitted).

Second, the Court found that Pierce did not consent to the bankruptcy court's

determination of Vickie's counterclaim against Pierce by filing a proof of claim in the

bankruptcy case.  *Id.* at 2615 n.8.  Because a creditor in bankruptcy must file a proof of claim to

recover against the estate, merely filing a proof of claim cannot be considered consent to a

bankruptcy court's decision of matters unrelated to that claim or the bankruptcy.  For this reason,

the Court noted that the notion of jurisdictional "consent" does not apply in bankruptcy

proceedings as it might in other contexts.  *Id.*  Notably, however, the Court did not rule out the

efficacy of express or implied consent to a non-Article III decision-maker.

>    2.  *Confusion in the Courts Following* Stern

In the wake of the Supreme Court's decision in *Stern*, bankruptcy courts outside of this

District have split on the issue whether bankruptcy judges have the authority to enter default

judgments based on a defendant's failure to respond to an adversary complaint.  Some courts

have entered default judgments in preference actions, reasoning that preference avoidance and

recovery actions under sections 547 and 550 of the Bankruptcy Code are not affected by the

*Stern* decision.  *See Hagan v. Classic Prods. Corp.* (*In re Wilderness Crossings, LLC*), 2011 WL

5417098 (Bankr. W.D. Mich. Nov. 8, 2011); *White v. Pugh (In re Butler Innovative Solutions)*,

2011 WL 4628746 (Bankr. D.D.C. Oct. 4, 2011); *see also Apex*, 465 B.R. at 463 (preference

recovery involves equality of distribution, an essential attribute of bankruptcy proceedings,

rather than simply augmentation of the estate).

Other courts have taken what is arguably the safest path by submitting proposed findings

of fact and conclusions of law to the district court for entry of a final judgment, thus avoiding the

question whether a bankruptcy judge has the authority to enter the final order.  *See, e.g., Best*

*Western Int'l Inc. v. Richland Hotel Corp.,* 2012 WL 608016 (D. Ariz. Jan. 18, 2012); *Mich.*

*State Univ. Fed. Credit Union v. Ueberroth (In re Ueberroth),* 2011 Bankr. LEXIS 5136 (Bankr.

W.D. Mich. Dec. 19, 2011); *Hagan v. e-Limidebt, Inc. (In re Gifford*), 2011 U.S. Dist. LEXIS

104488 (W.D. Mich. Sept. 15, 2011); *Reed v. Johnson (In re Johnson),* 2011 Bankr. LEXIS 3542

(Bankr. W.D. Mich. Aug. 22, 2011).

Judge Hughes in the Eastern District of Michigan has written at length on the topic of bankruptcy judge authority to enter default judgments, ultimately concluding that bankruptcy judges lack the authority to enter final default judgments for claims that would be covered by the *Stern* decision. *See Moyer v. Koloseik (In re Sutton)*, 470 B.R. 462 (Bankr. W.D. Mich. 2012); *Meoli v. Huntington Nat'l Bank (In re Teleservices Grp., Inc.),* 456 B.R. 318 (Bankr. W.D. Mich. 2011). However, Judge Dales, his colleague in the same district, has disagreed. *See In re Wilderness Crossings,* 2011 WL 5417098.

The focus in most of these cases has centered on whether the default at issue involves claims as to which the bankruptcy court may enter final orders or judgments if the cases are actually litigated to conclusion. This Court sees the issue differently—namely, does the failure to respond to a properly served adversary complaint constitute implied consent to the entry of a final judgment by a bankruptcy judge? The Court concludes that it does, meaning a bankruptcy judge has the constitutional authority to enter a final default judgment when the defendant fails to respond to the complaint.

Only one decision at the Circuit court level since *Stern* may be read to *preclude* the use of consent to authorize an Article I judge to enter a final order or judgment. *See Waldman v. Stone*, 698 F.3d 910. In *Waldman*, a chapter 11 debtor-in-possession, Ron Stone, brought an adversary proceeding in bankruptcy court against his principal creditor, Randall Waldman. Before *Stern* was decided, the bankruptcy court found that Waldman had obtained nearly all of Stone's business assets through fraudulent means. As relief, the bankruptcy court entered a final judgment discharging Stone's debt to Waldman and awarding Stone more than $3 million in compensatory and punitive damages. *Id.* at 914. The district court affirmed the bankruptcy court and *Stern* was decided while Waldman's appeal to the Sixth Circuit was pending. After

requesting additional briefs addressing the issues raised by *Stern*, the Sixth Circuit affirmed the

bankruptcy court's discharge of Stone's debt, but it held that the bankruptcy court lacked

constitutional authority to enter a final judgment awarding Stone compensatory and punitive

damages.

Waldman challenged the bankruptcy court's ability to enter a judgment on several

grounds, the most relevant being that the bankruptcy court lacked constitutional authority to

enter a final judgment on Stone's claims based on Article III of the Constitution.[11]  The Sixth

Circuit held that Waldman's failure to raise the argument below (before *Stern* was decided) did

not constitute implied consent.  *Id.* at 917-18.  Citing *Schor,* the court found that Waldman's

objection implicated the structural right to an Article III judge, in addition to his personal right,

because "Article III envisions—indeed it mandates—that the judicial Power will be vested" in

Article III judges, and if "Congress can shift the judicial Power to [non-Article III judges], the

Judicial Branch is weaker and less independent than it is supposed to be."  *Id.*  According to the

court, while personal rights may be waived, structural rights cannot, and therefore Waldman did

not forfeit his ability to object to the bankruptcy court's final determination of the matter by not

raising the issue below.  *Id.* at 918-19.

The simplest answer for present purposes is that the *Waldman* decision is inconsistent

with the Second Circuit's decision in *Men's Sportswear,* which is the controlling precedent for

this court.[12]  As further explained below, *Waldman* is also inconsistent with the recent decision

---

[11]    *Waldman* also argued that the judgment was beyond the statutory authority of the bankruptcy court because the claims were non-core claims under section 157, meaning the bankruptcy court lacked power to enter final judgment on them.  *Id.* at 916-17.  The court held that Waldman forfeited this objection because his own pleadings expressly stated that all of Stone's claims in the case were core.  *Id.*

[12]    *Waldman* never directly discusses the issue of consent (never mentioning "consent") and it does not address the portions of *Stern* that support consent, and specifically section 157(c)(2).  Furthermore, in support of the discussion about the structural component of Article III, *Waldman* emphasizes only the importance of the structural

by the Ninth Circuit in *Bellingham,* 2012 WL 60113836, which concluded that implied consent

is effective to permit a bankruptcy judge to enter a final order or judgment on a fraudulent

conveyance claim even though the bankruptcy court could not do so absent consent.

With respect to the merits of the objection, the *Waldman* court framed the issue whether a

bankruptcy court may issue a final judgment as turning on whether Stone's claims were private

rights, which are reserved for Article III courts, or public rights, which may be determined by

bankruptcy court judges.  *Waldman,* 698 F.3d at 918-19.  The *Waldman* court held that the

bankruptcy court was constitutionally permitted to enter final judgment on Stone's disallowance

claims against Waldman because those claims arose under section 502(b) of the Bankruptcy

Code and were "part and parcel" of the claims-allowance process in bankruptcy.  *Id.* 919-21.

Conversely, Stone's affirmative claims arose exclusively under state law and fit into the new

category created by *Stern* of "core" claims that could not be finally adjudicated by a bankruptcy

court.  Accordingly, the *Waldman* court found that the bankruptcy court's entry of a final

judgment with respect to those claims violated Article III.[13]  *Id.* at 921-22.

In a recently issued decision, the Ninth Circuit took the opposite view and held that

implied consent is sufficient to provide a bankruptcy judge with constitutional authority to enter

a final order or judgment.  While concluding that a defendant in a fraudulent conveyance action

_____

component of Article III (*see Waldman*, 698 F.3d at 917-18), but it fails to address the critical issue, derived from
*Murray's Lessee*, *Schor* and *Stern*, that the structural component of Article III prevents *Congress* from removing
cases from Article III judicial cognizance, something that has not occurred here.

[13]        The court remanded the case to the bankruptcy court to recast its judgment as proposed findings of fact and
conclusions of law.  Interestingly, the Sixth Circuit noted that, in contrast to the parties' assertions in their pleadings,
Stone's affirmative claims were non-core, and therefore the bankruptcy court could issue proposed findings of fact
and conclusions of law.  *Id.* at 922.  The court did not decide whether a statutory "gap" would have prevented the
bankruptcy court from issuing the proposed report had the claims been core.  As previously noted, the Ninth Circuit
in *Bellingham* and district courts in this District have specifically rejected the argument that any statutory "gap"
would prevent a bankruptcy court from issuing proposed findings of fact and conclusions of law for core claims that
may not be finally adjudicated by an Article I court.  *See supra* note 10.

is entitled to an Article III decision-maker, the court held that the defendant in that case could—

and did—impliedly consent to final adjudication by a non-Article III tribunal.  *See Bellingham*,

2012 WL 60113836, at *11-14.  The bankruptcy court had granted summary judgment to the

plaintiff on a fraudulent conveyance claim.  *Id.* at *1.  The Ninth Circuit affirmed the bankruptcy

court's final judgment in the action.  While the court concluded that the defendant was

constitutionally entitled to final determination by an Article III judge, the defendant consented to

the bankruptcy court's adjudication of the issue by failing to object to the bankruptcy court's

authority to finally decide the case.  *Id.*  The defendant raised the objection for the first time in a

motion to dismiss submitted to the Ninth Circuit.  *Id.* at *2.

The court explained:

> Following the genesis of the modern bankruptcy system, the
> Supreme Court clarified that "Article III, § 1's guarantee of an
> independent and impartial adjudication by the federal judiciary of
> matters within the judicial power of the United States . . . serves to
> protect primarily personal, rather than structural, interests."  *Stern*
> further made clear that § 157 "does not implicate questions of
> subject matter jurisdiction."  Accordingly, "as a personal right,
> Article III's guarantee of an impartial and independent federal
> adjudication is subject to waiver."  And in fact, § 157(c)(2)
> expressly provides that bankruptcy courts may enter final
> judgments in non-core proceedings "with the consent of all the
> parties to the proceeding." 28 U.S.C. § 157(c)(2).
>
> If consent permits a non-Article III judge to decide finally a non-
> core proceeding, then it surely permits the same judge to decide a
> core proceeding in which he would, absent consent, be disentitled
> to enter final judgment.  The only question, then, is whether EBIA
> did in fact consent to the bankruptcy court's jurisdiction.

*Id.* at *11 (citations omitted).  Because the defendant failed to timely object to the bankruptcy

court's final judgment, it consented to such final determination by a non-Article III judge.  *Id.* at

*12-13 (notwithstanding the provision in Rule 7012 that requires express consent, "a litigant's

actions may suffice to establish consent").

3.    Stern *Does Not Impact Whether a Bankruptcy Court May Issue a Default Judgment*

*Bellingham*, rather than *Waldman*, accurately reflects the law in the Second Circuit. Since 1938, the Federal Rules of Civil Procedure have provided authority for the Clerk of the court to enter a default judgment in a case in which a defendant has failed to appear and the plaintiff seeks only a sum certain or that can be made certain through calculation. Nothing in *Stern* suggests that the procedure set forth in Rule 55 authorizing the Clerk to enter a default judgment is constitutionally suspect. Moreover, nothing in *Stern* suggests that consent of the parties is not effective in permitting a bankruptcy judge to enter a final order or judgment. Cases decided before and after *Stern* recognize that implied consent by conduct may permit a non-Article III judge to enter final orders or judgments in matters in which the parties would otherwise have the right to an Article III judge.

Reading *Murray's Lessee*, *Schor* and *Stern* together, the structural right to an Article III judge guarantees that *Congress* may not remove from Article III judicial cognizance cases that were triable in courts of law, equity or admiralty at the time of the adoption of the Constitution. With the gloss that *Stern* placed on a bankruptcy court's authority to enter final orders or judgments (i.e., requiring that proposed findings of fact and conclusions of law be submitted to the district court with respect to certain matters), Congress has not removed from judicial cognizance any class of cases referred to the bankruptcy courts. If a defendant appears, defends, and refuses to consent to an Article I bankruptcy judge's entry of a final judgment or order in "related-to" or core matters covered by the *Stern* decision and its progeny, the bankruptcy judge may not do so. But only the individual waivable constitutional right is implicated.

Where a summons and complaint have been properly served and the defendant has failed to respond, the Court concludes that the defendant's actions, or lack thereof, (1) serve as an

24

admission of the material allegations of the complaint except as to the amount of damages, *see*

FED. R. CIV. P. 8(b)(6), and (2) constitute implied consent to the entry of a default judgment by a

bankruptcy judge.   The answer is the same whether the claims asserted in the adversary

complaint are core, non-core, or core but for which only an Article III judge may enter a final

order or judgment consistent with the U.S. Constitution absent consent.   Additionally, where the

plaintiff seeks only "a sum certain or a sum that can be made certain by computation," the Clerk

of the bankruptcy court may enter the final default judgment without any action by a judge.[14]

---

[14]         In this case no hearing was required to determine the amount of damages since only a judgment for a sum certain was requested.  The plaintiff did not request an award of prejudgment interest; but in many cases motions for entry of default judgments in preference avoidance actions include requests for prejudgment interest.  An award of prejudgment interest in preference avoidance actions is discretionary so only a judge acting under Rule 55(b)(2) and not the Clerk acting alone under Rule 55(b)(1) may include prejudgment interest in a judgment.  *See* 10A CHARLES ALAN WRIGHT, ARTHUR J. MILLER & MARY K. KANE, FEDERAL PRACTICE AND PROCEDURE § 2683 n.1 (3d ed. 1998) ("Had the request for a judgment by default included an amount of prejudgment interest, it would have been necessary for plaintiff to address its request to the court, as allowance of prejudgment interest in the absence of a statutory provision is in the discretion of the court.") (citation omitted); *McHale v. Boulder Capital LLC (In re The 1031 Tax Group, LLC)*, 439 B.R. 84, 87 (Bankr. S.D.N.Y. 2010) ("Although there is no specific reference to prejudgment interest in the Bankruptcy Code, courts have typically relied on the word 'value' in section 550(a) as authorizing an award of interest.  Courts in the Second Circuit and in this district have recognized that the award of prejudgment interest is discretionary, and absent a sound reason to deny prejudgment interest, such interest should be awarded.") (internal citations and footnote omitted).  In a case in which the defendant fails to appear, the Court concludes that a bankruptcy judge may include prejudgment interest in a final default judgment, if appropriate, based on the facts and circumstances of the case.  *Boulder Capital*, 439 B.R. at 87.

### III.    CONCLUSION

The defendant in this case was properly served with the summons and complaint.  Having clearly been told the consequences of failing to timely respond to the complaint, and thereafter failing to do so, the defendant evinced clear and knowing, albeit implied, consent to this Court's entry of a default judgment.  For the foregoing reasons, the motion of the Trustee for entry of a default judgment in this adversary proceeding is **GRANTED**.

**IT IS SO ORDERED.**

Dated:    December 20, 2012
      New York, New York

             *Martin Glenn*
             MARTIN GLENN
          United States Bankruptcy Judge

26